UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| TAYLOR ROY SHEPHERD,<br><br>    Petitioner,<br><br>vs.<br><br>BRUNO STOLC, Warden,<br><br>    Respondent. | Case No: C 10-4906 SBA<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; AND DENYING CERTIFICATE OF APPEALABILITY** |

This matter is now before the Court for consideration of Petitioner Taylor Roy Shepherd's pro se Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 ("Petition") which alleges a Sixth Amendment claim for ineffective assistance of counsel ("IAC"). Petitioner alleges that his trial attorneys provided deficient advice in connection with his guilty plea in 2005 to charges of possession of marijuana in jail and violations of probation ("VOP"). Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the Petition.

## I.   BACKGROUND

### A.   PROCEDURAL SUMMARY

Resolution of the instant habeas petition involves three separate state court prosecutions brought against Petitioner. The Court briefly discusses each case below.

#### 1.   Case No. LP31047.01

In early 2002, Petitioner pleaded guilty to possession of methamphetamine and was placed on three years' probation. In November 2003, Petitioner admitted to a VOP, and in January 2004, the court reinstated probation on condition, among others, that Petitioner serve six months in jail.

**2.     Case No. CR5528**

Based on an incident occurring on August 28, 2002, a three-count information was filed against Petitioner charging him with: (1) mayhem; (2) assault with a deadly weapon and by means of force likely to produce great bodily injury; and (3) felony child endangerment.  The latter two charges included allegations that Petitioner personally inflicted great bodily injury.  The facts underlying these offenses are particularly relevant to Petitioner's claims in the present federal petition.  As such, the Court includes a summary of those facts from the state appellate court opinion in People v. Shepherd, No. A104614, 2005 WL 435492 (Cal. Ct. App. Feb. 25, 2005) ("Shepherd I"):

> On August 28, 2002, Kate Lane was living in Nice, California with her children Elliott, then 15 years old, and Jessica, then 17 years old.  Nick Perez, a family friend who was 14 years old, lived with the Lanes.  Williams Santos, 22 years old, lived in a trailer up the hill from the Lane residence.  A 16-year-old friend of Elliott's, Darnay Rostohn, had come over to visit the Lanes' house on that date.
>
> On the evening of August 28, Jessica left the home against her mother's instructions and went up the hill to Santos's trailer where a number of other people had gathered to drink alcohol and socialize.  Kate, who had returned from work at 6:00 p.m., was very upset that Jessica had disobeyed her and was apparently drinking.  Nick and Elliott observed Kate sitting at the kitchen table crying.
>
> At 9:00 or 9:15 p.m., Darnay, Elliott, and Nick walked up the hill to Santos's trailer to find Jessica and bring her home.  They found Jessica in the kitchen.  Antoinette Alfaro, another partygoer, was holding onto Jessica, and they were both drunk.  Elliott asked Jessica several times to come home and tried to pull on Antionette's arms to get them apart.
>
> Defendant walked up and separated the two girls.  Afterward, he took Elliott aside and told him that his sister had a drinking problem.  Defendant appeared to be intoxicated.  He was staggering, and his speech was slurred.  Based on his tone of voice, defendant seemed upset.  Elliott told defendant, in a normal tone of voice, that he knew Jessica had a drinking problem, that he just wanted to get her home, and then he would handle the problem.  Elliott also calmly told defendant to "stay out of it."
>
> Defendant responded by punching Elliott in the right eye with his fist.  Other than telling defendant to "stay out of it," Elliott

> had done nothing that would have provoked defendant's attack on him. After defendant hit him, Elliott did not retaliate because he knew defendant was drunk. Instead, Elliott once against tried to get Antoinette off his sister and to get his sister to come home.
>
> After hitting Elliott, defendant seemed angry and started punching a cabinet that was near the back door of the house. One of the cabinet doors broke off its hinges. After Jessica was separated from Antoinette, Elliott, Jessica, Nick, and Darnay started to leave the trailer through the back door, next to the broken cabinet. They were going to go down the hill to the Lane residence. They exited the trailer, and Elliott and Nick went down the stairs. Darnay and Jessica followed them.
>
> Defendant came up to Elliott and asked if everything was "cool." Elliott responded to defendant's question with words to the effect, "Yes, if you don't flip out again." The two of them may have shaken hands. Thereafter, defendant punched Elliott in the face again. Elliott had not done anything to provoke this attack. Again, Elliott did not fight back. Another partygoer grabbed defendant and walked him away.
>
> Elliott started walking down the open field toward home, with Darnay, Nick, and Jessica following him. Before they left the area of Santos's trailer, however, defendant came outside holding the door of the broken cabinet. He proceeded down toward the foursome that was already walking down the hill. Jessica asked defendant if he was going to hit her with the door. He looked angry. Defendant yelled, "Hey," very loudly. When defendant yelled, "Hey," everyone looked. Elliott turned around. When defendant was a few steps from Elliott, he threw the cabinet door like he was passing a basketball. The corner of the door hit Elliott in the forehead. Elliott dropped to the ground.
>
> After throwing the door at Elliott, defendant ran down to where Elliott was lying on the ground. Elliott was not moving. Defendant bent down and punched Elliott in the face. After punching Elliott, defendant ran away.
>
> Elliott's head was split wide open, and blood was everywhere. After being taken to Sutter Lakeside Hospital, Elliott was helicoptered to Children's Hospital in Oakland, where he underwent surgery to repair a fracture to his skull.

Answer, Ex. G at 2-5.

In August 2003, a jury found Petitioner guilty as charged and found the great bodily injury allegations true. The court placed Petitioner on five years' probation on the

condition that, among other things, he serve 360 days in jail. In a nonpublished opinion, the California Court of Appeal ordered the no gambling condition of the probation stricken, but otherwise affirmed the judgment. See Shepherd I, No. A104614.

On April 9, 2004, the court summarily revoked Petitioner's probation in case no. CR5528 and his first case based on allegations that he had refused to submit to drug testing and possessed marijuana in the county jail.[1] A bench warrant for his arrest was issued.

On May 3, 2005, the probation department filed an amended revocation report adding allegations that Petitioner failed to submit monthly reports pertaining to his residence and employment, and failed to maintain contact with the probation department. The court summarily revoked probation on September 19, 2005. Petitioner later admitted to VOPs in both cases due to violating the law, failing to report, and failing to submit to drug testing.

### 3.  Case No. CR900977

On June 14, 2004, Petitioner was charged by information with possession of marijuana in jail. An amended information filed in July 2004 added allegations of probation ineligibility, and three prior strike convictions pursuant to California's Three Strikes statute. See Cal. Penal Code §§ 667(b)-(i). The new drug charge arose from an incident that took place on March 29, 2004, while Petitioner was being housed at the Lake County Hill Road Correctional Facility. According to the probation report summary, a correctional officer approached Petitioner in a warehouse at the jail. The officer observed Petitioner placing a rolled up baggie believed to contain marijuana into a white cloth bag.

On February 28, 2005, the parties stipulated that Petitioner's three cases (the new charge and the probation violations in the two prior cases) would be heard together. On November 7, 2005, Petitioner pled guilty to possessing marijuana in jail, and, on the prosecution's motion, the court dismissed the three prior strike convictions.

---

[1] The allegation of Petitioner's possession of marijuana also was charged as a new case in CR900977, which is summarized *infra*.

### 4.     Sentencing

The court sentenced Petitioner to prison for six years on count III in case no. CR5528, plus a three-year enhancement for inflicting great bodily injury.  In addition, the court imposed a concurrent eight-year sentence on count I and a concurrent four-year sentence on count II.  Sentencing for the bodily injury enhancement in count II was stayed.  As to case no. LP31047.01, the court sentenced Petitioner to a consecutive term of eight months (one-third the middle term), and in case no. CR900977, a consecutive term of one year.  Petitioner's total sentence was for *ten years and eight months*.

### 5.     Appeals and Writ Petitions

Petitioner timely appealed his aggregate sentence of ten years and eight months in the three cases.  In an unpublished opinion dated November 27, 2007, the California Court of Appeal found the imposition of concurrent sentences in counts I and II of case no. CR5528 to be improper, concluding that that case involved one act directed at one victim.  See People v. Shepherd, No. A113232, 2007 WL 4172310 (Cal. Ct. App. Nov. 27, 2007) ("Shepherd II").  The appellate court modified Petitioner's sentence to stay the two concurrent terms in case no. CR5528, and affirmed the judgment as modified.  Id. at 15.  The California Supreme Court denied the petition for review on March 12, 2008.  Answer, Ex. 2.

On January 22, 2009, Petitioner filed a petition for a writ of habeas corpus in the Lake County Superior Court alleging an IAC claim based on erroneous advice regarding his maximum sentencing exposure.  Answer, Ex. B, vol. 1, Pet'r Ex. 14 (Superior Court Petition).[2]  The state superior court denied the petition.  Answer, Ex. B, vol. 2, Pet'r Ex. 21 (Superior Court Order Denying Writ) at 2.  In a two-paged reasoned opinion, the state superior court stated:

---

[2] Attached to the Answer as Exhibit B, volumes 1 and 2 are Petitioner's exhibits in support of his state habeas petition filed in the California Supreme Court.  Therefore, the Court will include Petitioner's exhibit numbers and descriptions in order to specify the exact document being cited to in Exhibit B.  The page numbers used are not those marked by Petitioner; instead, the Court has numbered each page chronologically, beginning with page one for the page directly after the exhibit divider.

> [T]he advisement of the possible consequences of the defendant's pleas did not constitute ineffective assistance of counsel. Because of the allegation of three strikes in Case No. [CR]900977, counsel had to discuss the possibility of the defendant receiving 25 years to life if convicted in that case. Given the uncertainty of whether one or more of the strikes would be stricken at sentencing, Counsel had to present the defendant with a "worst case scenario." Moreover, because there were two separate acts of aggression in Case No. CR5528, it would not be a clear abuse of discretion for a sentencing judge to refuse to strike one or more of the prior serious felony convictions.

Id. at 1-2.  The state superior court also conducted a harmless error analysis, noting:

> [A]ny misadvisement of the consequences of a plea is subject to a harmless error analysis. All of the prior serious felony convictions that were alleged in Case No. [CR]900977 were stricken, and the defendant was sentenced to 10 years and 8 months. This court finds that any miscalculation on Mr. Rhoades' part was harmless.

Id. at 2.

On August 25, 2009, Petitioner filed a petition for a writ of habeas corpus in the California Court of Appeal. Answer, Ex. B, vol. 2; Pet'r Ex. 22 (Appellate Court Petition). On February 18, 2010, the state appellate court summarily denied the petition. Answer, Ex. B, vol. 2; Pet'r Ex. 27 (Appellate Court Order Denying Writ).

On or about March 1, 2010, Petitioner filed a petition for a writ of habeas corpus in the California Supreme Court. Answer, Ex. F. On October 20, 2010, the state supreme court summarily denied the petition. Answer, Ex. E.

On October 28, 2010, Petitioner filed the instant Petition. Dkt. 1. The Court ordered Respondent to show cause why the writ should not be granted. Respondent filed an answer and a supporting memorandum of points and authorities, and lodged exhibits with the Court. Petitioner did not file a traverse.

**B.   SUMMARY RELATING TO GUILTY PLEA AND IAC CLAIM**

### 1.   California's Three Strikes Law

Before addressing the merits of Petitioner's IAC claim, it is helpful to briefly review California's Three Strikes statute, which provides that "[w]hen a defendant is convicted of

- 6 -

a felony, and he has previously been convicted of one or more prior felonies defined as 'serious' or 'violent' in Cal. Penal Code Ann. §§ 667.5 and 1192."[3] Ewing v. California, 538 U.S. 11, 15 (2003). If a defendant convicted of any new felony has suffered one prior conviction of a serious felony, then "the determinate term or minimum term for an indeterminate term shall be twice the term otherwise provided as punishment for the current felony conviction." Cal. Penal Code § 667(e)(1).

A "third strike" defendant (i.e., a person with two or more prior felony convictions) receives an indeterminate term of life imprisonment, which includes a minimum term. The minimum term for a third strike defendant is the greatest of (i) "[t]hree times the term otherwise provided as punishment for each current felony conviction subsequent to the two or more prior felony convictions," (ii) twenty-five years imprisonment in the state prison, or (iii) "[t]he term determined by the court pursuant to section 1170 for the underlying conviction," including any applicable enhancements. Cal. Penal Code § 667(e)(2)(A). These provisions apply in addition to any other enhancements or punishment provisions which may apply. Id. § 667(e).

### 2. Advice Regarding Sentencing Exposure

A total of three trial attorneys represented Petitioner from 2004 when the newest case (no. CR900977) arose, until he was sentenced in all three cases on March 6, 2006. Answer, Ex. B, vol. 1, Pet'r Ex. 11 (Decl. of Pet'r) ¶ 6. The gist of Petitioner's IAC is that his trial counsel overestimated his potential sentence exposure, and had he been correctly advised, he would not pleaded guilty.

Petitioner claims that his first attorney, Jona L. Saxby, advised him that his maximum exposure was "25 years to life under the Three Strikes Law." Id. ¶ 7. Attorney Saxby informed him, however, that "the court had the discretion to strike any or all of the 'strike' priors pursuant to [People v. Romero, 13 Cal. 4th 497 (1996)]." Id. Petitioner also

---

[3] California voters approved Proposition 36 in November 2012 substantially amending the Three Strikes law, but because Petitioner was sentenced prior to these amendments, the 1994 law was applied. Therefore, in this Order, the Court refers to the text of the Three Strikes law prior to the November 2012 amendment.

complains that while counsel said that she would try to persuade the court to strike the prior strikes under People v. Burgos, 117 Cal. App. 4th 1209, 1214 (2004), she never advised him that his three prior convictions could only be counted as one prior strike. Id. On January 10, 2005, Attorney Saxby withdrew as Petitioner's trial counsel. Id. ¶ 6.

Attorney Douglas E. Rhoades substituted in and represented Petitioner during the November 7, 2005 hearing in which Petitioner pled guilty to the new charge and admitted to the VOPs in his two prior cases. Pet. at 8.[4] Attorney Rhoades noted the maximum possible sentence Petitioner faced in the probation violation cases and the new pending criminal charge could either be eighteen years and eight months, taking into account one strike allegation and California Penal Code § 667(e)(1),[5] or it could be up to twenty-five years to life, taking into account three strikes allegations and California Penal Code § 667(e)(2)(A)(ii). Id. at 9.

The record shows that during Petitioner's change of plea hearing on November 7, 2005, Attorney Rhoades placed on record the possible maximum exposures based on his calculations:

> MR. RHOADES:   . . . Mr. Shepherd's exposure in the VOP as it sits right now I believe that has been calculated both by myself and Mr. Hinchcliff as eight years, eight months.
>
> He has, of course, pending a new criminal case which is the underlying basis for the [VOP]; and if he were to be convicted of that matter in the criminal proceeding with the strike allegation that's contained in there in a combined sentencing of the two matters I believe his exposure would then be 18 years, eight months.
>
> Mr. Hinchcliff told me a little bit ago, and I think he may well be correct, that even though it's not alleged exact as such within the complaining documents because there is a potential of more than one strike offense that the exposure could actually be a 25 to life exposure.

---

[4] When referring to the Petition, the Court will be citing to the numbered pages from the state supreme court petition, entitled "Petition for Writ of Habeas Corpus," which is attached to the federal habeas corpus petition form. Dkt. 1.

[5] The Court notes that there is no calculation in the record breaking down Attorney Rhoades's calculation of the eighteen years, eight months maximum exposure.

> Mr. Shepherd certainly wants to avoid that and wants to avoid the 18 years, eight months that we believed his exposure would be if he were convicted in the newer matter in a combined sentencing with the matter for which he is on probation.
>
> Having said all that, I've discussed this with Mr. Shepherd and believe that the disposition we have in mind is the admission of the VOP, actually VOPs, I think there's an additional -- admission of the VOPs and then the entry of a plea in the new matter with the People moving to dismiss the strike allegations.

Answer, Ex. B., vol. 1, Pet'r Ex. 9 (RT 11/7/05 re Change of Plea), RT 3-4.  Petitioner confirms that Attorney Rhoades advised him he could face "18 years and eight months imprisonment based, with one 'strike' prior, and that perhaps [he] was facing 25 years to life because of the three 'strike' priors."  Answer, Ex. B, vol. 1, Pet'r Ex. 11 (Decl. of Pet'r) ¶ 8.  Petitioner claims that Attorney Rhoades "never advised [him] that [his] three prior convictions in case no. CR-5528 could only be counted as one 'strike.'"  Id.

Petitioner retained another attorney, Stephen D. Tulanian, to handle his sentencing hearing on January 23, 2006.  Answer, Ex. B, vol. 1, Pet'r Ex. 11 (Decl. of Pet'r) ¶ 6.  Attorney Tulanian proceeded with Petitioner's sentencing consistent with the prior attorneys' maximum exposure calculations.  Counsel "did not advise [Petitioner] that [he] was misadvised as to the exposure on the three cases prior to [his] entry of the guilty plea . . . ."  Id. ¶ 9.  Petitioner alleges that had Attorney Tulanian done so, he would have "requested [Attorney Tulanian] to prepare a request to the court to withdraw [the] guilty plea in case no. CR900977 and [his] probation violation admissions in case nos. [LP]31047.01 and CR-5528."  Id. ¶ 11.

Petitioner claims that on January 10, 2007, he learned of the "true maximum exposure as to all three cases" from his appellate counsel, Paul F. DeMeester.  Id. ¶ 12.  Petitioner asserts that he should have been advised by his trial attorneys that the maximum

sentence he faced was eleven years and eight months based on one strike sentencing.[6]  Id.; Pet. at 9.  Petitioner also contends that had he known of the "true" exposure, he would not have accepted a plea bargain of ten years and eight months and would have proceeded to a jury trial on the new charge.  Id.

## II.   LEGAL STANDARD

### A.   ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state court proceeding unless the proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1) (emphasis added).

A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent."  Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (internal quotation marks omitted).

Relief under the "unreasonable application" clause is appropriate "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id.  Habeas petitioners bear the burden of showing that a state court's decision applied some Supreme Court precedent in an objectively unreasonable manner.  Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

---

[6] Appellate Attorney DeMeester has submitted a declaration explaining his calculation of Petitioner's maximum sentencing exposure.  Answer, Ex. B, vol. 1, Pet'r Ex. 12 (Decl. of Appellate Counsel) ¶ 3.

In determining whether a state court's decision is contrary to, or involves an unreasonable application of, clearly established federal law, this Court reviews the "last reasoned decision" by the highest state court to address the merits of the petitioner's claim. See Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion to analyze whether the state judgment was erroneous under the standard of § 2254(d).  Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).  In the present case, the last state court opinion to address the merits of Petitioner's claim is the reasoned opinion of the Lake County Superior Court.

Habeas relief is warranted only if the constitutional error at issue is structural error or had a "substantial and injurious effect or influence in determining the jury's verdict." Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

**B.   INEFFECTIVE ASSISTANCE OF COUNSEL**

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  There is a two-prong test applicable to claims for ineffective assistance of counsel.  Id. at 688.  First, the defendant must show "that counsel's representation fell below an objective standard of reasonableness."  Id.; see also Hasan v. Galaza, 254 F.3d 1150, 1154 (9th Cir. 2001).  The defendant must overcome a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance which, under the circumstances, might be considered sound trial strategy.  Harrington v. Richter, 131 S. Ct. 770, 787 (2011); United States v. Molina, 934 F.2d 1440, 1447 (9th Cir. 1991).  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 468 U.S. at 687.

To satisfy the second prong, the petitioner must establish that he was also prejudiced by counsel's substandard performance.  See Gonzalez v. Knowles, 515 F.3d 1006, 1014 (9th Cir. 2008) (citing Strickland, 466 U.S. at 694).  Under Strickland, "[o]ne is prejudiced if there is a reasonable probability that but-for counsel's objectively unreasonable performance, the outcome of the proceeding would have been different."  Id.  "The likelihood of a different result must be substantial, not just conceivable."  Richter, 131 S. Ct. at 792 (citing Strickland, 466 U.S. at 693).  Judicial scrutiny of counsel's performance is "highly deferential."  Strickland, 466 U.S. at 689. A claim for ineffective assistance of counsel fails if either one of the prongs is not satisfied.  Strickland, 466 U.S. at 697.

The only challenges left open in federal habeas corpus after a guilty plea are to the voluntary and intelligent character of the plea and the nature of the advice of counsel to plead.  See Hill v. Lockhart, 474 U.S. 52, 56-57 (1985); Tollett v. Henderson, 411 U.S. 258, 267 (1973).  A defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases.  Hill, 474 U.S. at 56.  In order to establish prejudice, he must show there is a reasonable probability that, but for counsel's unprofessional errors, he would not have pleaded guilty and would have insisted on going to trial.  See id. at 57-59; Iaea v. Sunn, 800 F.2d 861, 864-65 (9th Cir. 1986).

### III.   DISCUSSION

Petitioner claims that his trial attorneys incorrectly advised him regarding the maximum exposure he faced prior to entering his guilty plea.  Specifically, Petitioner asserts that his "true" maximum exposure of eleven years and eight months was significantly less than the twenty-five years to life possible sentence disclosed by his trial attorneys.  Petitioner alleges that had he been adequately advised regarding his sentencing exposure, he would have proceeded to trial.  Petitioner contends trial counsel allegedly should have known that the Three Strikes Law would not apply to him based on: (1) the statutory prohibition set forth California Penal Code § 654, which limits punishment when

multiple convictions arise from a single act; and (2) the holding of People v. Burgos, 117 Cal. App. 4th 1209 (2004) that it is an abuse of discretion to refuse to strike one of two prior strike convictions where the two prior strike convictions arose from the same act. The Court discusses each issue, in turn.

### 1. California Penal Code § 654

California Penal Code § 654 "prohibits . . . multiple punishment when a course of conduct violates more than one statute but is an indivisible transaction, determined by reference to the intent and objective of the actor." People v. Bellacosa, 147 Cal. App. 4th 868, 875 n.2 (2007).[7] It is well-established, however, that the statute "'do[es] not apply to crimes of violence against multiple victims.'" People v. Oates, 32 Cal. 4th 1048, 1063 (2004). Under this "multiple-victim" exception, "'even though a defendant entertains but a single principal objective during an indivisible course of conduct, he may be convicted and punished for each crime of violence committed against a different victim.'" People v. Garcia, 32 Cal. App. 4th 1756, 1781 (1995).

Replying on § 654, Petitioner argues that while he suffered three convictions in case no. CR5528, his counsel should have known that only one strike resulted from that case because all three convictions arose out of a single act. Pet. at 13. As support, Petitioner points to the state appellate court's 2007 opinion in Shepherd II. In that appeal, Petitioner argued that imposing concurrent sentences violated § 654 because they punished the *same act*—i.e., throwing the cabinet door at Elliott—and such act was punished by the principal term of six years imposed for count III (child endangerment). Shepherd II, 2007 WL 4172310 at *3. The prosecution countered that the concurrent terms were proper on the grounds that the offenses had multiple victims; namely, Elliot and the three other minors present. Id. at *8. The state appellate court rejected the prosecution's multiple victim

---

[7] California Penal Code section 654 provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other." Cal. Penal Code § 654(a).

theory. The court explained that "[a] trial court's implied finding that Penal Code section 654 is inapplicable must be sustained unless it is unsupported by substantial evidence." Id. at *9. As to count I (mayhem), the prosecution conceded that Elliott was the only victim. Id. With regard to count II, the court concluded that the trial court's implied finding that the three minors other than Elliot were victims of the assault was not supported by substantial evidence. Id. In particular, the court noted that the evidence showed that Petitioner's hostility was directed specifically at Elliot, that Elliot was on a "few steps away" when he was assaulted, and that there was no evidence that the others were in close proximity to Elliott to be endangered by the assault. Id. The court concluded that "[b]ecause no substantial evidence supports the imposition of concurrent sentences on counts I and II," the sentences on those counts must be stayed pending the completion of the sentence on count III. Id.

The fact that Shepherd II stayed the sentence on two of the counts in case no. CR5528 does not support the conclusion that Petitioner's attorneys inadequately advised him in 2005 of the sentencing risks he faced. Indeed, the superior court, in rejecting Petitioner's IAC claim, explained that because of the allegation of three strikes in Case No. 900977, "counsel had to present the defendant with a 'worst case scenario'" due to the "uncertainty" as to whether "one or more of the strikes would be stricken at sentencing . . . ." Answer, Ex. B, vol. 2, Pet'r Ex. 21 (Superior Court Order Denying Writ) at 2. The court added that "because there were two separate acts of aggression in Case No. CR 5528, it would not be a clear abuse of discretion for a sentencing judge to refuse to strike one or more of the prior serious felony convictions." Id.

An independent review of the record supports the conclusion that Petitioner's counsel's performance was not deficient. At the time of the 2005 plea hearing, counsel were aware that the trial court would be considering evidence that Petitioner: (1) punched the victim inside a trailer; (2) punched him again when the victim left the trailer with three other minors; (3) walked away, then proceeded back toward the four individuals, and threw a broken cabinet door at their direction, hitting the victim and causing his head to split

open; and (4) ran to where the victim lay on the ground, and punched him again.  Answer, Ex. G at 2-5.  Because there were three other individuals present in addition to the victim, a reasonable attorney had to consider the possibility that the trial court would find substantial evidence (particularly if an expanded factual record were developed at trial) to warrant separate sentences on each of the three counts under the "multiple-victim" exception to § 654.

The record further shows that prior to Petitioner's guilty plea, Attorney Saxby filed a <u>Romero</u> motion which sought to dismiss to strike allegations, and therein raised the "multiple-victim" exception to § 654.  Answer, Ex. B, vol. 1, Pet'r Ex. 4 (<u>Romero</u> Motion); Pet'r Ex. 7 (Pet'r Romero Reply) at 3-4.  Counsel argued that the charges in case no. CR5528 involved multiple convictions arising out of a single act by Petitioner, and pointed out that § 654 should apply.  <u>Id.</u>  At the motion hearing on November 5, 2004, the trial court "dropped" the <u>Romero</u> motion without prejudice.  Answer, Ex. B, vol. 1, Pet'r Ex. 8 (RT 11/5/04 re Withdrawal of Romero Motion) at 5.  However, the record shows that the court deferred ruling and left the sentencing judge to decide the issue as to the applicability of § 654 in order to "deem all [his] prior 'strike' convictions as one for the purposes of sentencing."  <u>Id.</u> at 7-9; Answer, Ex. B, vol. 1, Pet'r Ex. 11 (Decl. of Pet'r) at 4.  After Attorney Saxby withdrew her representation in January 2005, neither Attorney Rhoades nor Attorney Tulanian pursued Attorney Saxby's motion relating to the applicability of § 654, presumably because the issue was mooted by the trial court's dismissal of the three prior strike convictions.

In sum, the Court finds that, under these circumstances, Petitioner's trial attorneys acted reasonably in advising him that he potentially faced twenty-five years to life sentence if he proceeded to trial and lost.  Attorney Rhoades made it clear in his comments on the record at the November 7, 2005 proceedings that Petitioner's reason for entering the plea agreement was to avoid such an exposure, especially in light of the fact that the prosecutor agreed to move to strike the three prior strike convictions as a condition of taking the plea. Furthermore, at least one of Petitioner's attorneys—Attorney Saxby—considered the

application of § 654 to case no. CR5528; however, because this issue was never decided, Petitioner faced the possibility of grave punishments from three strike sentencing. Although there was a potential argument that the three prior strikes could only be counted as one strike, it is arguable that the record—particularly as developed at trial—could support a finding of multiple acts of violence on multiple victims. The sentencing exposure advice provided to Petitioner prudently informed him of a worst case scenario situation.

### 2. Burgos Issue

Petitioner also argues that his trial attorneys' advice was erroneous in light of Burgos, which held that the failure to strike a prior conviction was an abuse of discretion where two prior strike convictions arose from a single act. 117 Cal. App. 4th at 1214. Petitioner argues that in light of this holding, his counsel should have known that his three convictions in case no. CR5528 would only be counted as a single strike—and as such—it was erroneous for them to advise him that he faced a 25-year-to-life sentence under the Three Strikes Law. This claim lacks merit.

As an initial matter, Petitioner's suggestion that counsel were unaware of the Burgos rule is unfounded given that Attorney Saxby relied on Burgos in moving the trial court to strike his priors. Answer, Ex. B, vol. 1, Pet'r Ex. 4 (Romero Motion) at 6-7. The record then shows that Attorney Rhoades chose not to pursue Attorney Saxby's motion prior to the plea hearing. Such a decision apparently was motivated by the prosecution's agreement to dismiss the prior strikes allegation entirely as a term of the plea bargain offered to Petitioner. In applying and defining the Strickland standard, "substantial deference must be accorded to counsel's judgment." Premo v. Moore, 131 S. Ct. 733, 736 (2011). The Court finds that Petitioner's attorneys' advice was "within the range of competence demanded of attorneys in criminal cases," McMann v. Richardson, 397 U.S. 759, 771 (1970), as informing the client of the *full range* of sentencing possibilities in any given case does not amount to incompetence under "prevailing professional norms," Strickland, 466 U.S. at 688-689.

Moreover, Burgos is not as unequivocal as Petitioner seems to suggest.  In People v. Scott, 179 Cal. App. 4th 920 (2009), the court noted that there are differing interpretations of Burgos, with some commentators suggesting that it mandates the striking of multiple priors based on the same criminal act.  Id. at 929-930.  On the other hand, the Scott court concluded that the fact that the prior strikes are based on the same act is a *factor* to consider in whether to strike a prior strike, but is not dispositive.  Id. ("The trial court got it right: Whichever rule Burgos meant to announce, we conclude the "same act" circumstances posed by robbery and carjacking cases provide a factor for a trial court to consider, but do not mandate striking a strike.").  Prior to the plea hearing—without a ruling by the trial court on either the Romero motion or the Burgos issue—a reasonable attorney in Petitioner's attorneys' positions would have considered the worst case scenario, which included the possibility that the trial court would *not* strike any of the priors.  As noted, the trial court found sufficient evidence in case no. CR 5528 to apply the "multiple-victim" exception to § 654.  Based on that decision, Petitioner's trial attorneys could not be assured that that same trial court would also have relied on the Burgos rule to strike two of the alleged strike priors.

The record simply does not support Petitioner's contention that his attorneys were ignorant of the law and provided him with erroneous advice regarding his sentencing exposure.  Notwithstanding Burgos, there remained the distinct possibility that Petitioner would be sentenced under the Three Strikes Law if he proceeded to trial and lost.  So long as that possibility existed, which it clearly did, it was incumbent upon prudent counsel to advise Petitioner of the "worst case" scenario should he declined to accept the plea offer. The Court finds that Petitioner has failed to satisfy the first prong under the Strickland standard for IAC.  Therefore, the state superior court was reasonable to conclude that his attorneys' performance under the Sixth Amendment was not unreasonable in light of the circumstances.

**B.     PREJUDICE**

When a defendant contends that incompetent advice led to his pleading guilty, he must establish not only incompetent performance by counsel, but also a reasonable probability that, but for counsel's incompetence, the defendant would not have pleaded guilty and would have insisted on proceeding to trial.  Hill, 474 U.S. at 57-59; Strickland, 466 U.S. at 691-92.  "[A]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  Id.

Petitioner has failed to show prejudice.  Even if Petitioner had rejected the plea offer and proceeded to trial, it remained far from certain as to how the trial court would have applied California Penal Code § 654 or Burgos.  In fact, the state superior court, in rejecting Petitioner's habeas petition, recognized this, noting that "because there were two separate acts of aggression in case no. CR5528, it would not be a clear abuse of discretion for a sentencing judge to refuse to strike one or more of the prior serious felony convictions."  Answer, Ex. B, vol. 2, Pet'r Ex. 21 (Superior Court Order Denying Writ) at 1-2.

The California Court of Appeal's decision in Shepherd II does not help Petitioner's case.  Even accepting Petitioner's argument that the two stayed sentences ordered by the state appellate court precluded strikes as to those two crimes, the remaining conviction in case no. CR5528 still supported a one strike sentence in case no. CR900977.  Defense counsel calculated that without the plea bargain, Petitioner could face eighteen years and eight months if convicted in the new case with one strike allegation.  Answer, Ex. B, vol. 1, Pet'r Ex. 9 (RT 11/7/05 re Change of Plea), RT 3.  Petitioner's purpose was to avoid such a one strike sentence, as well as exposure to a 25-year-to-life sentence.  Id., RT 4.  While Petitioner argues that the maximum exposure of *one strike* sentencing should have only been eleven years and eight months (as calculated by his appellate attorney), neither he nor his appellate attorney chose to consider the possibility that the sentencing court could have denied such a sentence upon deciding that neither California Penal Code § 654 nor Burgos mandated that it strike two of the alleged three strike priors.  "It is not enough for the

[petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, [. . .] and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Strickland, 466 U.S. at 693. As explained above, the sentencing court was not conclusively required to consider the acts of case no. CR5528 as constituting "a single act" for sentencing purposes, and thus, Petitioner has failed to establish "a reasonable probability" that absent his trial attorneys' alleged errors, he would have rejected the plea bargain and proceeded to trial.

Furthermore, the record shows that Petitioner's decision to accept the plea bargain was not only motivated by his belief in the maximum sentence exposures indicated by his attorneys, but also by his desire to have his prior strikes dismissed by the court at the prosecutor's request. The prosecutor's offer to move the court to dismiss the three strike priors—if Petitioner accepted the plea bargain—assured Petitioner that he would no longer be facing the possibility of three strike sentencing of twenty-five years to life, which was a significant benefit. Finally, even if Petitioner argues he faced a "true" maximum exposure of eleven years and eight months for one strike sentencing, he was still sentenced after his guilty plea to less time—albeit by only one year—an aggregate sentence of ten years and eight months. Thus, this Court concludes that the state superior court was reasonable in finding that any miscalculation by Attorney Rhoades—or any alleged misadvice as to the maximum exposure by his other trial attorneys—was harmless.

### C.    CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling. See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009). The Court declines to issue a COA in this case, as Petitioner has not demonstrated that reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

## IV. CONCLUSION

The state court's rejection of Petitioner's IAC claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d); Hill, 474 U.S. at 58-59.  The Court finds that Petitioner has failed to demonstrate that he is entitled to habeas relief under AEDPA.  Accordingly,

IT IS HEREBY ORDERED THAT:

1. The Petition for Writ of Habeas Corpus is DENIED, and a COA will not issue.  Petitioner may seek a COA from the Ninth Circuit Court of Appeals.

2. The Clerk of the Court shall enter judgment, terminate any pending motions, and close the file.

IT IS SO ORDERED.

Dated: 3/31/14

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
Senior United States District Judge

P:\PRO-SE\SBA\HC.10\Shepherd4906.denyHC-KFFrev.docx